UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DONALD EDGAR JOHNSON,      )
      )
      Plaintiff,      )      Case No. 1:90-cv-175
      )
v.      )      Honorable Robert Holmes Bell
      )
CARL A. JOHNSON, JR., et al.,      )
      )      **OPINION**
      Defendant.      )
_____ )

      On December 18, 1990, this court, Honorable Benjamin F. Gibson presiding, entered a final judgment in favor of defendants. The court found that *res judicata* stemming from a then 16-year-old Muskegon County Circuit Court judgment barred all plaintiff's claims. (docket # 103). Plaintiff pursued an unsuccessful appeal, and the United States Supreme Court thereafter denied plaintiff's petition for certiorari. *See Johnson v. Johnson*, No. 91-1160, 1991 WL 138458 (6th Cir. July 29, 1991). Plaintiff refuses to accept that his lawsuit is over and that he lost. Over the years, plaintiff has amassed such an astounding and unprecedented series of bad faith, frivolous, and vexatious filings that docket entries in this closed case now nearly equal the days in a calendar year. The court's efforts to deter frivolous filings by imposition of sanctions have proved insufficient to curb plaintiff's litigation abuses. Since 1990, an injunction has prohibited plaintiff from filing any other pleadings or documents. In 1998, the court found plaintiff to be in civil contempt, and the injunction was expanded to include a sanction of $200 against plaintiff for every pleading or other document that plaintiff files, attempts to file, or otherwise submits to any judge or any other person

associated with the court.  The United States Court of Appeals for the Sixth Circuit has upheld both the injunction and this court's imposition of $1,200 sanctions against plaintiff pursuant to it.  *See Johnson v. Johnson*, 56 F. App'x 237 (6th Cir. Feb. 7, 2003).  Plaintiff has never paid the $1200 in sanctions and remains in contempt.

The matter is now before the court on twelve documents filed by plaintiff between March 1, 2006 and today's date.  (docket #'s 348, 349, 350, 351, 353, 354, 355, 356, 357, 358, 360, 361).  The court finds plaintiff filed, attempted to file, or submitted all twelve documents in violation of the court's injunction.  Accordingly, additional sanctions in the amount of $2,400 will be imposed against plaintiff for his most recent violations of the court's injunction.[1]  The injunction will be modified and expanded because the existing injunction is insufficient to deter plaintiff.

### Litigation History

A mid-1960's dispute between plaintiff and his father and brothers that eventually gave rise to this lawsuit is now approaching its golden anniversary.   "The dispute led to litigation and a trial was held in Muskegon County Circuit Court.  A judgment adverse to plaintiff was entered by that court on December 9, 1974.  The plaintiff failed to perfect a timely appeal with the Michigan Court of Appeals.  Thereafter, the plaintiff unsuccessfully petitioned the circuit court on several occasions for relief from the December 9, 1974 judgment."  (12/18/1990 Op., docket # 102).

On February 27, 1990, plaintiff initiated this lawsuit by paying the $120 filing fee and filing his complaint.  (docket # 1).  On December 18, 1990, Judge Benjamin F. Gibson issued an

---

[1] Plaintiff's recent letters (docket # 352, 359), and a document that plaintiff attempted to file in 2004 (docket # 348) violated the injunction, but the court has elected to refrain from imposing an additional $600 in sanctions.

opinion and judgment summarizing plaintiff's sixteen years of unsuccessful litigation preceding the filing of this lawsuit. Judge Gibson described plaintiff's obsessive efforts to have the 1974 Muskegon County Circuit Court judgment overturned as "quixotic." He observed that, "Unlike most unsuccessful litigants, the plaintiff refused to accept the fact that he had lost his case. Rather, with a degree of perseverance rarely seen even in *pro se* litigants, he has sought to collaterally attack the circuit court judgment in a number of forums." Judge Gibson noted that by December of 1990, plaintiff had already amassed eighty orders issued by seven different courts. He found that these orders revealed that plaintiff had presented numerous appeals to the Michigan Court of Appeals and Michigan's Supreme Court, all of which had been summarily denied. The United States Supreme Court denied plaintiff's petition for certiorari. Plaintiff's father was a defendant in plaintiff's original Muskegon County Circuit Court lawsuit. After his father's death, plaintiff unsuccessfully attempted to collaterally attack the judgment by filing a claim against his father's estate, and plaintiff later unsuccessfully appealed the dismissal of his lawsuit against his father's estate. Judge Gibson observed that on at least three occasions plaintiff had made unsuccessful federal court challenges to the state-court judgment. On December 18, 1990, Judge Gibson entered judgment in favor of defendants, finding that all plaintiff's claims were barred by *res judicata*. Judge Gibson found that injunctive relief was necessary to protect the court and defendants from plaintiff's frivolous and abusive litigation:

> [T]he court strongly advises the plaintiff, as others have in the past, that this litigation is over and his attempts to overturn the decision of the circuit court are futile. Unfortunately, given the number of times this matter has been presented to this Court and others in the past sixteen years, the Court believes that the plaintiff will not heed this advice. Therefore, the plaintiff will be enjoined from submitting any further documents or pleadings regarding this matter with this Court and the Court's clerk will be enjoined from accepting such documents or pleadings from him.

Plaintiff filed a notice of appeal and paid the then applicable filing fee of $105. (docket # 104). On July 29, 1991, the United States Court of Appeals issued its opinion affirming Judge Gibson's decision, and on March 9, 1992, the Supreme Court denied plaintiff's petition for *certiorari*. *See Johnson v. Johnson*, No. 91-1160, 1991 WL 138458 (6th Cir. July 29, 1991), *cert. denied*, 503 U.S. 927 (1992).

Immediately after the Supreme Court denied plaintiff's petition for *certiorari*, plaintiff began filing new materials in the closed case. The court rejected these documents. Plaintiff filed a notice of appeal (docket # 121) and the applicable filing fee. The Sixth Circuit's December 23, 1992 opinion summarized plaintiff's post-judgment submissions as follows:

> [O]n April 27, 1992, the district court received a pleading entitled, "Emergency Motion For Change In Venue; And In The Alternative, To Alter The Order Denying A Rule 60(b)(5)(6) Evidentiary Hearing Re Defendants' 1990-1992 Frauds Upon The Courts." On May 8, 1992, the district court entered an order rejecting the pleading for the reason that a final judgment had been entered dismissing plaintiff's action. On May 12, 1992, the district court received a pleading entitled, "Supplement To Reply To Petition To Determine Distribution Has Been Made." The district court rejected this pleading in an order entered May 22, 1992, also for the reason that a final judgment had been entered dismissing plaintiff's case. Finally, on May 26, 1992, the district court received a pleading entitled, "Emergency Motion For Declaratory Judgment." On June 3, 1992, the district court entered an order rejecting this pleading for the same reason as stated in the prior orders of May 8, 1992 and May 22, 1992.

*Johnson v. Johnson*, No. 02-1829, 1992 WL 392892, at * 1 (6th Cir. Dec. 23, 1992). The Sixth Circuit affirmed this court's orders rejecting plaintiff's post-judgment pleadings. "In each of the submitted pleadings, plaintiff attempted to relitigate issues previously decided adversely to him. A final judgment has been entered dismissing plaintiff's action, that decision has been affirmed by this court and a petition for *certiorari* has been denied by the Supreme Court. Thus, no clear error of judgment on the part of the district court exists in this case." *Id.*, at * 2.

-4-

On July 22, 1993, the Court of Appeals issued its mandate (docket # 134), and thereafter plaintiff initiated a new onslaught of motions seeking relief from the court's judgment and various orders rejecting pleadings. (*See* docket #'s 135-142). On January 4, 1994, then Chief Judge Gibson attempted to fashion an expanded injunction sufficient to curb plaintiff's abuses. He issued an injunction ordering plaintiff to refrain from filing any further complaints or pleadings relating to the claims against defendants made in this lawsuit. Chief Judge Gibson's injunction allowed exceptions for (1) an appeal of his injunction; or (2) any filing reviewed by a magistrate judge and found not to be frivolous or made in bad faith. Plaintiff's response was twofold: (1) submitting an avalanche of documents to this court's magistrate judges requesting various forms of relief; and (2) pursuing appeals to the district judge of the magistrate judges' decisions finding that plaintiff's submissions were frivolous and in bad faith. On September 23, 1994, Chief Judge Gibson entered an order affirming the magistrate judges' orders and advised plaintiff that if he continued to file frivolous pleadings he faced contempt proceedings. (docket # 202). Plaintiff continued to violate the injunction. On November 4, 1994, Chief Judge Gibson issued an order denying plaintiff's motions. (docket # 206). On November 15, 1994, plaintiff filed a notice of appeal and again paid the $105 appellate filing fee. (docket #'s 207, 208). On June 27, 1995, the Sixth Circuit issued its opinion affirming this court's denial of plaintiff's motions. *See Johnson v. Johnson*, No. 94-2305, 1995 WL 385142 (6th Cir. June 27, 1995). The Sixth Circuit's opinion concluded with a warning to plaintiff that he faced appellate sanctions if he continued to file frivolous appeals:

> [A] court possesses an inherent authority to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43-46 (1991). Johnson's current appeal represents his third attempt before this court to vacate the 1974 state court judgment. Should Johnson continue to file frivolous appeals involving the 1974 decision, the court may impose sanctions against him.

1995 WL 385142, *2.  On March 4, 1996, the Supreme Court denied plaintiff's petition for *certiorari*.  (docket # 233).

Following plaintiff's well-established pattern, he returned to this court and began filing motions for relief from the court's judgment and other orders.  When the requested relief was denied, plaintiff filed notices of appeal and paid the appellate filing fees.  (docket #'s 248, 249, 256, 260).  On May 1, 1997, the Sixth Circuit issued another opinion affirming this court's orders.  *See Johnson v. Johnson*, Nos. 96-1826, 96-1979, 1997 WL 225503 (6th Cir. May 1, 1997).  The Court of Appeals found that, "Plaintiff's latest efforts to reopen the case are not based on new grounds and were properly characterized by the district court as frivolous."  1997 WL 225503, at * 2.  The Court of Appeals again concluded its opinion with a warning of possible appellate sanctions:

> [P]laintiff is again warned that further appeals involving this subject matter may lead to sanctions including, but not limited to, an order enjoining such appeals in the future.

1997 WL 225503, at * 2.  A new spate of motions by plaintiff followed on the heels of the appellate mandate.  (docket # 262).

On August 13, 1997, then Senior District Judge Gibson adopted a magistrate judge's report and recommendation concluding that all the supplements and attachments submitted by plaintiff were in violation of the court's December 19, 1990 and January 4, 1994 orders.  The court scheduled a show cause hearing for October 6, 1997, to determine whether plaintiff should be held in contempt of court for his blatant disregard of the court's orders.  (docket # 274).  Plaintiff immediately filed a notice of appeal and again paid the $105 filing fee.  (docket #'s 275-76).  Plaintiff filed a total of three unsuccessful appeals in 1997 (case nos. 97-1944, 97-1955 and 97-2062), and the Supreme Court denied plaintiff's petitions for *certiorari* in all three cases.

On December 5, 1997, Senior Judge Gibson issued an order finding that plaintiff continued to violate the court's injunction and directed the Clerk of the Court to reject and return the following documents to plaintiff:

(1)    Emergency plaintiff's Motion for Leave to Request a Court-Scheduled 3-Judge Hearing (received August 11, 1997);

(2)    Supplement to Emergency Plaintiff's Motion for Leave to Request a Court-Scheduled 3-Judge Hearing (received August 13, 1997);

(3)    Emergency Plaintiff's Motion to Alter or Amend the Court's 8/13/97-filed Order; and in the Alternative, for Declaratory Judgment and Certification of Questions for Emergency Interlocutory Appeal (received August 18, 1997);

(4)    Supplement to Emergency Plaintiff's Motion to Alter or Amend the Court's 8/13/97-filed Order; and in the Alternative, for Declaratory Judgment and Certification of Questions for Emergency Interlocutory Appeal (received August 19, 1997);

(5)    2nd Supplement to Emergency Plaintiff's Motion to Alter or Amend the Court's 8/13/97-filed Order; and in the Alternative, for Declaratory Judgment and Certification of Questions for Emergency Interlocutory Appeal (received August 20, 1997); and

(6)    3rd Supplement to Emergency Plaintiff's Motion to Alter or Amend the Court's 8/13/97-filed Order; and in the Alternative, for Declaratory Judgment and Certification of Questions for Emergency Interlocutory Appeal (received August 21, 1997).

(docket # 299).

This case was reassigned to Senior Judge Douglas W. Hillman on October 8, 1998, after Judge Gibson's retirement.  (docket # 305).  On October 13, 1998, Judge Hillman issued an order modifying and expanding the court's previous injunctions against plaintiff.  This injunction permanently enjoined plaintiff from filing any further pleadings in this action other than an appeal of the injunction.  (docket # 306).  On October 26, 1998, Senior Judge Hillman dismissed plaintiff's emergency motion to stay proceedings and certify questions for interlocutory appeal, brief in support,

and supplement (docket #'s 307, 309, and 310) as frivolous.  Judge Hillman ordered that plaintiff

appear before the court on November 16, 1998, to show cause why he should not be held in contempt

of court for filing the above-referenced documents in direct violation of the court's injunction.

(docket # 311).  On November 2, 1998, plaintiff filed a petition for a writ of mandamus in the United

States Court of Appeals for the Sixth Circuit.  One week later, the Sixth Circuit dismissed the

petition as frivolous.  *See In re Johnson*, No. 98-2190 (6th Cir. Nov. 9, 1998).  Judge Hillman

conducted a hearing on November 16, 1998, and found by clear and convincing evidence that

plaintiff was guilty of civil contempt.  The court's November 17, 1998 order of civil contempt

(docket # 315) ordered plaintiff to pay $200 to the Clerk of the Court not later than November 30,

1998, as partial reimbursement for the costs incurred by the court as a result of plaintiff's

contemptuous filings and in conducting the contempt proceedings.  The court ordered that plaintiff

be subjected to a fine of $200 for each pleading he attempted to file in the future in this action or in

any new action arising out of the same subject matter, with the sole exception being a notice of

appeal of Judge Hillman's order of civil contempt.  (docket # 315).  Plaintiff paid the initial $200

contempt sanction.  (docket # 317).  Immediately thereafter, plaintiff tried to bypass the injunction

by attempting to "appeal" Judge Hillman's decision to the then chief judge of this court, Judge

Richard A. Enslen.  Plaintiff's proposed pleadings were rejected.  (docket #'s 320, 321).  On July

14, 1999, Senior Judge Hillman issued an order clarifying the injunction.  Plaintiff was permanently

enjoined from filing, attempting to file, or otherwise submitting to any judge or any other person

associated with this court any additional pleadings or other documents connected with this action

or arising from the same transaction or occurrences that were the subject matter of this litigation; and

(2) that plaintiff was subject to a fine of $200 for each pleading or other document that he filed, attempted to file, or submitted in violation of the terms of the injunction.   (docket # 322).

On July 29, 1999, Senior Judge Hillman issued an order returning pleadings to plaintiff and imposing a $200 fine.  (docket # 323).  Plaintiff paid the $200 fine.  (docket # 325).  On August 16, 1999, plaintiff filed a petition for mandamus in the United States Court of Appeals for the Sixth Circuit.  On September 28, 1999, the Court of Appeals dismissed the petition as frivolous.  The same order directed the Clerk of the United States Court of Appeals for the Sixth Circuit to not accept for filing any future original actions pertaining to this lawsuit.  The only exception provided was for appeals of future findings of contempt against plaintiff.  *See Johnson v. Johnson*, No. 99-1903 (6th Cir.  Sept. 28, 1999), *cert. denied*, (May 18, 2000), *pet. for rehearing denied*, (July 7, 2000).

"Undeterred, plaintiff continued to file pleadings in this case."  *Johnson v. Johnson*, 56 F. App'x 237 (6th Cir. Feb. 7, 2003).  In June of 2002, the court found plaintiff in contempt and imposed sanctions against plaintiff totaling $1,200.  (docket #'s 332, 333, 334).  Plaintiff requested and the court granted leave to appeal *in forma pauperis* (docket # 339), restricted to the issue of the propriety of the court's injunction and monetary sanctions.  (docket # 339).  On February 3, 2003, the Sixth Circuit issued its opinion affirming this court's imposition of $1,200 in sanctions pursuant to the injunction.  56 F. App'x at 238.  Plaintiff has never paid the $1,200 in sanctions and remains in contempt of court.

In clear violation of this court's injunction, plaintiff submitted another lawsuit on July 17, 2003.  Plaintiff was granted leave to proceed *in forma pauperis. Johnson v. State of Michigan*,

1:03-cv-489-RAE (W.D. Mich. 2003).  On October 3, 2003, Judge Enslen dismissed this lawsuit

with prejudice.  Paragraph three of Judge Enslen's order states as follows:

> Plaintiff's many pleadings in this matter are largely unintelligible and relate primarily to another unsuccessful and now terminated civil action pursued for many years before the Honorable Douglas W. Hillman.  However, the Court has been able to discern the following. Pursuant to recent proceedings in the state courts of Michigan, plaintiff was apparently determined to be both mentally ill and dangerous.  As a result he was allegedly hospitalized against his will.  Plaintiff now seeks to be released from "confinement."[2]  Consistent with his apparent obsession with his prior unsuccessful litigation, Plaintiff does not seek release for his own sake, but instead seeks release so that he can yet continue to advance the claims he pursued endlessly before Judge Hillman, the Sixth Circuit Court of Appeals, and the United States Supreme Court.

(10/03/2003 Op. at 2).   Plaintiff followed the identical pattern in case no. 1:03-cv-489-RAE.  He

filed and attempted to file numerous documents after the lawsuit had been dismissed.   Plaintiff's

abusive filings eventually resulted in Judge Enslen entering a permanent injunction, which states in

pertinent part, as follows:

> On October 13, 1998, an order was entered in Case No. 1:90-CV-175 enjoining Plaintiff from filing "any additional actions arising from the transaction/occurrences that were the subject matter of this litigation."  The Court finds the instant case arises from the same transaction/occurrences as Case No. 1:90-CV-175, in part because that case is referenced in Plaintiff's Complaint and the cases listed by Plaintiff as related cases.
>
> * * *
>
> IT IS FURTHER ORDERED that in accordance with the Order entered December 13, 1998 in Case No. 1:90-CV-175, Plaintiff is permanently enjoined from filing any further pleadings in this action.  The clerk is to reject without filing and without review by a magistrate judge any pleading submitted by Plaintiff for filing in the present action; the only exception is a notice of appeal of [] this Order.

---

[2] Plaintiff identified himself as being "incarcerated" in the documents he most recently filed with the court.  (docket #'s 360, 361).  Documents plaintiff filed in case no. 1:03-cv-489-RAE indicated that plaintiff was mentally ill and in 2003 was subject to an order of civil commitment. Plaintiff describes himself as being 83 years old and in his third year of incarceration, (docket # 356, ¶ IV), thus suggesting, but not definitively establishing, that plaintiff remains the subject of an order of civil commitment.

-10-

(04/12/04 Final Order, case no. 1:03-cv-489-RAE).  Plaintiff pursued multiple appeals and paid the

applicable filing fees. The Sixth Circuit dismissed plaintiff's appeals. *See Johnson v. Michigan*, No.

04-1700 (6th Cir. Nov. 8, 2004); *Johnson v. Michigan*, No. 04-1887 (6th Cir. Nov. 15, 2004).

Although this case has now been closed for more than fifteen years, plaintiff filed,

attempted to file, or otherwise submitted a dozen documents in 2006 in direct and deliberate

violation of the court's injunction:

1. "3rd Supplement to Emergency Motion For Leave to Proceed in Forma Pauperis and Appeal Michigan Supreme Court 1/30/06 Decision," rejected by 3/1/06 order (docket # 348);

2. "4th Supplement to Emergency Motion For Leave to Proceed in Forma Pauperis and Appeal Michigan Supreme Court 1/30/06 Decision," rejected by 3/7/06 order (docket # 349);

3. "5th Supplement to Emergency Motion For Leave to Proceed in Forma Pauperis and Appeal Michigan Supreme Court 1/30/06 Decision," rejected by 3/9/06 order (docket # 350);

4. "6th Supplement to Emergency Motion For Leave to Proceed in Forma Pauperis and Appeal Michigan Supreme Court 1/30/06 Decision," rejected by 3/16/06 order (docket # 351);

5. "Emergency Plaintiff's Petition for Hearing to Resolve 5 Questions," rejected by 4/12/06 order (docket # 353);

6. "Plaintiff's Objection to 4/5/06 Untimely Rejection of 4/2/06 Petition for hearing to Resolve 5 Questions," filed April 17, 2006(docket # 354);

7. "Plaintiff's Emergency Motion to Immediately Resolve this Seven Months Independent Civil Rights Action," filed May 1, 2006 (docket # 355);

8. "Supplement to Emergency Motion to Resolve Questions or Certify Them to the Court of Appeals," filed April 28, 2006 (docket # 356);

9. "2nd Supplement to Emergency Motion to Resolve Questions or Certify Them to the Court of Appeals," filed April 25, 2006 (docket # 357);

10.    "Corrected Plaintiff's Emergency Motion to Immediately Resolve This Three Months Independent Civil Rights Action," filed May 8, 2006 (docket # 358); and

11.    "Plaintiff's Emergency Motion for Immediate Declaratory Judgment," filed May 12, 2006 (docket # 360);

12.    "Supplement to Plaintiff's Emergency Motion for Immediate Declaratory Judgment," filed May 16, 2006 (docket # 361).

## Discussion

### 1.    Plaintiff's Persistent and Repeated Violations of the Court's Injunction

Plaintiff has violated the court's injunction on twelve occasions this year and remains in contempt of court.  Plaintiff will be sanctioned in the amount of $2,400 for his twelve violations of the injunction addressed in this opinion.  The first five documents listed above have been rejected and returned to plaintiff.  The second group of documents (docket #'s 354, 355, 365, 357, 358,  360, 361) will be rejected, and the Clerk of the Court will be directed to return the documents to plaintiff.

### 2.    Modification of the Court's Injunction and Revocation of *in forma pauperis* Privilege

It is well established that federal courts have inherent powers to impose appropriate sanctions to deter future frivolous lawsuits and/or relitigation of the same lawsuit and frivolous and vexatious litigation. *See Cauthon v. Rogers*, 116 F.3d 1334, 1337 (10th Cir. 1997); *Wrenn v. Vanderbilt Univ. Hosp.*, Nos. 94-5453, 94-5593, 1995 WL 111480, at * 3 (6th Cir. Mar. 15, 1995); *accord Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998); *Telechron, Inc. v. Intergraph Corp.*, No. 95-1039, 1996 WL 370136, at * 2 (6th Cir. July 2, 1996).  Since 1990, an injunction pursuant to this court's inherent powers has been in effect against plaintiff, and that injunction has been expanded in response to each new series of plaintiff's litigation abuses.

Plaintiff's latest efforts to bury the court and its staff with frivolous papers compel the court to take more significant steps to bring plaintiff's otherwise perpetual litigation of this matter to a swift conclusion.

Every paper filed with the Clerk of this court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice. *See In re McDonald*, 489 U.S. 180, 184 (1989); *see also Demos v. Storrie*, 507 U.S. 290 (1993); *In re Sindram*, 498 U.S. 177, 180 (1991) ("The goal of fairly dispensing justice . . . is compromised when the Court is forced to devote its limited resources to the processing of repetitious and frivolous [claims]."). "'Frivolous, vexatious, and repeated filings by *pro se* litigants interfere with the orderly administration of justice by diverting scarce judicial resources from cases having merit . . . .'" *Purk v. United States*, No. 3:03 cv 287, 2005 WL 776135, at * 3 (S. D. Ohio 2005) (quoting *United States v. Circuit Court for Taylor County*, 73 F.3d 669, 671 (7th Cir. 1995)). "'[O]ne acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'" *Bradley v. Wallrad*, No. 1:06 cv 246, 2006 WL 1133220, at * 1 n. 2 (S.D. Ohio Apr. 27, 2006) (quoting *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988)); *see Moore v. Hillman*, Nos. 4:06-cv-43, 4:06-cv-45, 2006 WL 1313880, at * 4 (W.D. Mich. May 12, 2006).

Federal district courts necessarily have considerable discretion in drafting orders restricting an abusive litigant's access to courts. *See Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002) (given the plaintiff's "near obsession regarding his former employer, injunctive means [was] the only means that offer[ed] any chance of preventing further harassment");

*Martin-Trigona v. Shaw*, 986 F.2d 1384, 1387 (11th Cir. 1993); *United States v. MK-Ferguson Co.*,

99 F.3d 1538, 1548 (10th Cir. 1996); *Kettenburg v. Wal-Mart*, No. 04-cv-957E, 2004 WL 3019169,

at * 2-4 (W.D.N.Y. Dec. 23, 2004); *Ulysses I & Co. v. Feldstein*, No. 01 CV 3102 LAP, 2002 WL

1813851, at * 13 (S.D.N.Y. Aug. 8, 2002) ("The Federal courts have an institutional concern and

obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article

III functions."). Both the Supreme Court and the Sixth Circuit have reaffirmed the district court's

inherent authority to take action to prevent abuse of the judicial system. *See Chambers v. Nasco,*

*Inc.*, 501 U.S. 32, 43-45 (1991); *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th

Cir. 1997); *accord First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th

Cir. 2002). A prerequisite to the exercise of such power is a finding that a litigant has acted in bad

faith, vexatiously, wantonly, or for oppressive reasons. *Big Yank*, 125 F.3d at 313; *See Youn v.*

*Track, Inc.*, 324 F.3d 409, 421 (6th Cir. 2003). The concept of bad faith is an objective one. *See*

*Coppedge v. United States*, 369 U.S. 348, 445 (1962). A claim is brought in bad faith if it is

frivolous. *Id.*; *see Nabkey v. Gibson*, 923 F. Supp. 117, 122 (W.D. Mich. 1990). Objectively, the

dozen documents plaintiff filed in 2006 are a mere continuation of plaintiff's ongoing pattern of

violating this court's injunction, and certainly qualify as vexatious and bad-faith submissions.

Generally, an order pursuant to the court's inherent powers cannot completely

foreclose a litigant from access to the court. *See Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir.

1996). However, the right of access to courts is neither absolute or unconditional, and there is no

right of access to the courts to prosecute an action that is frivolous and malicious. *See Tripati v.*

*Beaman*, 878 F.2d 351, 353 (10th Cir. 1989); *Warren v. Michigan Dep't of Corr.*, No. 1:05-cv-654,

2005 WL 2461161, at * 2 (W.D. Mich. Oct. 4, 2005). Requiring review by a judge or magistrate

judge of any proposed filings by plaintiff previously proved completely ineffectual, and undoubtedly would again result in a significant waste of scarce judicial resources. *See Sassower v. American Bar Ass'n*, 33 F.3d 733, 736 (7th Cir. 1994). The court has long endeavored, and will once again attempt, to find the least severe sanction likely to deter this plaintiff. However, severe restrictions are warranted based on plaintiff's incredible record of abuses documented herein.

The injunction currently in place permanently enjoined plaintiff from filing, attempting to file, or otherwise submitting to any judge or any other person associated with this court any additional pleadings or other documents connected with this action arising from the same transaction or occurrence that were the subject matter of this litigation, and imposed a fine of $200 for each pleading or other document that plaintiff filed, attempted to file, or submitted in violation of the injunction. Plaintiff has never paid the $1,200 in sanctions imposed by the court in 2002. Plaintiff violated the injunction in 2003 when he filed his complaint in case no. 1:03-cv-489-RAE and plaintiff continued to violate the injunction throughout his years of litigating that case. The court finds that significant additional financial deterrence is required. The sanction for each violation of this court's injunction will be tripled to $600 and additional safeguards will be implemented to prevent plaintiff from continuing to litigate this matter by the mere expediency of filing another lawsuit. Plaintiff will be required to pay the entire $3,600 in sanctions and any additional sanctions imposed on or after the date of this opinion before being allowed to file or maintain any lawsuit in this court *pro se*. The Clerk of the Court will be directed to reject any pleading, document, or other paper of any type that plaintiff files, attempts to file, or otherwise submits *pro se* other than a notice of appeal of the court's injunction. The appeal, however, must be accompanied by the $455

appellate filing fee. *See Renobato v. Merrill Lynch & Co.*, 153 F. App'x 925, 927, 929 (5th Cir. 2005).

Plaintiff has abused the privilege of proceeding *in forma pauperis*, and will not be permitted to proceed on that basis on appeal of this decision, or in any future lawsuits filed in this court. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998); *Treff v. Galetka*, 74 F.3d 191, 197 (10th Cir. 1996) ("Leave to proceed without prepayment of fees and costs is a privilege, not a right" and courts have discretion to revoke that privilege when it no longer serves its goals).

Before being permitted to file or maintain any new lawsuit in this court, whether represented by a member of the State Bar or *pro se*, plaintiff will be required to post a $3,000 cash bond to cover potential costs, attorney's fees and sanctions that may be imposed against plaintiff. *See Stewart v. Fleet Fin.*, No. 99-2282, 2000 WL 1176881, at * 2 (6th Cir. Aug. 10, 2000) (affirming this court's order requiring plaintiff to file a $25,000 bond); *see also May v. Maas*, No. 05-11632, 2005 WL 2298296 (11th Cir. Sept. 22, 2005); *United States v. Circuit Court for Taylor County*, 73 F.3d at 674; *Jean v. Dugan*, 29 F. Supp. 2d 939 (N.D. Ind. 1998) (requiring payment of all sanctions and imposing $5,000 bond before allowing plaintiff to bring any future lawsuits).

Plaintiff's persistent attempts to relitigate matters previously decided by this and other courts have plagued the federal and state courts for decades. Therefore, in addition to the cash bond, any new complaint must be accompanied by an attachment providing an exhaustive compilation of plaintiff's litigation history. This litigation history must identify every lawsuit plaintiff has filed in any court by name, case number, court and named defendants. With regard to each such case, plaintiff must state the status of the case, identify by case number and date any request made for appellate review of any kind and the date and disposition made by the appellate court. Merely

-16-

attaching documents and attempting to incorporate them by reference will not suffice.  The court, however, will require that plaintiff identify by court, case number and date, and attach to his litigation history a copy of  any court order, opinion, or judgment imposing sanctions of any type against plaintiff.   Plaintiff must also attach to the document chronicling his litigation history plaintiff's signed affidavit,  sworn under penalty of perjury or unsworn declaration satisfying the statutory requirements for an unsworn declaration under penalty of perjury in 28 U.S.C. § 1746, affirmatively stating to the court that his new lawsuit does not seek to relitigate any of the issues asserted in any of the listed cases and that his new complaint is not being filed for any improper purpose.  *See e.g.*, *Johnson v. Serelson*, 23 F. App'x  949 (10th Cir. 2001); *Wilson v. Hart*, 47 F. Supp. 2d 966, 972-73 (N.D. Ill. 1999) ("[B]oth defendants and the judicial system are entitled to protection from stubbornly frivolous litigants.").

   Plaintiff must attach a copy of this opinion and the court's accompanying judgment and permanent injunction to any future complaints filed in any federal or state court.[3]  *See Feldstein*, 2002 WL 1813851, at * 14-16 (extending the attachment requirement to state courts as well as federal courts for the purpose of providing notice, in the spirit of cooperative federalism, to prevent relitigation of barred claims).   Plaintiff's failure to comply with the terms of the court's injunction

---

[3] Beyond the requirement of attaching this opinion and accompanying judgment and injunction, the court seriously considered enjoining plaintiff from participating in state court litigation.  Under the "relitigation" exception to the Anti-Injunction Act, this court is empowered to bar state court litigation altogether when it is necessary to protect or effectuate a prior judgment by a federal court.  *See Smith v. Woosley*, 399 F.3d 428, 431-32 (2d Cir. 2005); *Vines v. University of La. at Monroe*, 398 F.3d 700, 704 (5th Cir. 2005); *Baker v. African Methodist Church*, No. 4:04-cv-174-BAE, 2005 WL 1400750, at * 1 (S.D. Ga. June 7, 2005).  This  record would certainly support such a restriction.  However, the state courts have had extensive experience dealing with plaintiff's lawsuits and are quite capable of fashioning appropriate remedies to deal with plaintiff's state-court litigation abuses.  Michigan's courts are likely to have more current and  accessible  information regarding plaintiff's competency and status with regard to civil commitment.

shall be sufficient grounds for imposition of additional sanctions, including dismissal with prejudice of any future complaint and/or grounds for further contempt proceedings. *See Martin v. United States*, 245 F. Supp. 2d 92, 93-94 (D. D.C. 2003).

## Conclusion

For the reasons set forth herein, plaintiff will be sanctioned $2,400 for his twelve most recent violations of the court's injunction. Documents that plaintiff filed in violation of the injunction not previously rejected will be rejected and returned to plaintiff. The court's permanent injunction will be modified and expanded as indicated.


Date:      May 23, 2006                    /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           CHIEF UNITED STATES DISTRICT  JUDGE